UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY JULIAN BARRAZA, | No. 2:16-cv-2286 DB |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] Plaintiff's motion argues that the Administrative Law Judge's finding at step two of the sequential evaluation and treatment of the medical opinion evidence constituted error. For the reasons explained below, plaintiff's motion is granted in part, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings.

////

////

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 7 & 9.)

PROCEDURAL BACKGROUND

On February 25, 2009, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on March 4, 2006. (Transcript ("Tr.") at 201-09.) Plaintiff's application was denied initially, (id. at 161-67), and upon reconsideration. (Id. at 171-75.) Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on December 7, 2010. (Id. at 29.) In a decision published on February 18, 2011, the ALJ found that plaintiff was not disabled. (Id. at 37.) On July 26, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's February 18, 2011 decision. (Id. at 1-2.)

Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this court on September 29, 2012. (Id. at 938.) On April 15, 2014, plaintiff's motion for summary judgment was granted, the decision of the Commissioner of Social Security was reversed, and the matter was remanded for further proceedings. (Id. at 941-42.) Further administrative hearings before an ALJ were held on October 20, 2014, (id. at 844-61), January 20, 2015, (id. at 777-827), and August 18, 2015. (Id. at 828-43.) Plaintiff was represented by an attorney and testified at the January 20, 2015 hearing. (Id. at 780-816.)

In a decision issued on November 3, 2015, the ALJ again found that plaintiff was not disabled. (Id. at 767.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since November 7, 2008, the beginning of the unadjudicated period (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: glaucoma, corneal scarring, retinopathy, and depressive disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the

following nonexertional limitations: he cannot climb ladders, ropes or scaffolds, work at heights, or around dangerous machinery. He cannot work at jobs that require depth perception or fine visual acuity. He can understand and carry out simple, one to three step tasks. He cannot work with the public. He can interact with coworkers but not on team-type job functions or tasks. He can interact appropriately with supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 1, 1958 and was 49 years old, which is defined as a younger individual age 18-49, at the beginning of the unadjudicated period on November 7, 2008. On November 30, 2008, the claimant became an individual closely approaching advanced age. On November 30, 2013, he became an individual of advanced age. (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 4, 2006, through the date of this decision (20 CFR 404.1520(g)).

(Id. at 753-67.)

On July 22, 2016, the Appeals Council declined to assume jurisdiction over the matter. (Id. at 739-44.) Plaintiff again sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on September 24, 2016. (ECF. No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v.

Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion argues that the ALJ committed the following two principal errors: (1) the ALJ erred at step two of the sequential evaluation; and (2) the ALJ's treatment of

4

the medical opinion evidence constituted error.[2] (Pl.'s MSJ (ECF No. 20) at 12-17.[3])

I.  Step Two Error

At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. However, the regulation must not be used to prematurely disqualify a claimant. Id. at 158 (O'Connor, J., concurring). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290 (internal quotation marks and citation omitted).

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v.

---

[2] Although plaintiff's motion purports to raise three distinct claims, two of those claims concern the ALJ's treatment of the medical opinion evidence. Accordingly, the court has reorganized plaintiff's arguments for purposes of clarity and efficiency.

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

5

Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28); see also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results"). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis standard"); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's burden at step two as "low").

Here, plaintiff argues that the ALJ erred by finding that plaintiff's "back pain was nonsevere and caused no functional limitations." (Pl.'s MSJ (ECF No. 20) at 17.) In this regard, plaintiff argues that the ALJ's finding was "contrary to the opinion of Dr. Garfinkel, who examined Plaintiff in June 2009." (Id.) Plaintiff asserts that the ALJ "failed to give specific and legitimate reasons for rejecting Dr. Garfinkel's opinion." (Id.)

The ALJ's November 3, 2015 decision, however, found that the record was "devoid of any medical imagery or radiography documenting a severe back or joint impairment." (Tr. at 755.) "The claimant bears the burden to show medical evidence consisting of signs, symptoms, and laboratory findings to establish a medically determinable physical or mental impairment." Miller v. Colvin, 174 F.Supp.3d 1210, 1219 (D. Ariz. 2016). The ALJ's decision went on to note that in 2008 and 2009, plaintiff "attended physical therapy with good results." (Tr. at 755.) That in June of 2011, plaintiff reported that he walked four times a week for exercise. (Id.) That a May 2012 examination revealed a normal gait and station, with no misalignment, asymmetry, crepitation, defects, tenderness, masses, effusions, decreased range of motion, instability, atrophy, or abnormal muscle tone or stringy in the neck, spine or extremities. (Id.) Plaintiff fails to refute these findings.

Moreover, the lack of medical evidence was also a specific and legitimate reason for rejecting the opinion of Dr. Garfinkel, an examining physician.[4] See Tonapetyan v. Halter, 242

---

[4] Although plaintiff challenges the ALJ's failure to adopt a portion of Dr. Garfinkel's opinion, Dr. Garfinkel ultimately opined that plaintiff could perform medium exertional work. (Tr. at

1  F.3d 1144, 1149 (9th Cir. 2001) ("an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings"). The ALJ's decision discussed in detail both the lack of objective evidence in support and existing evidence that undermined a finding that plaintiff's back pain was a medically determinable impairment. (Tr. at 755-56.)

Accordingly, the court finds that plaintiff is not entitled to summary judgment on the claim that the ALJ erred at step two of the sequential evaluation by finding that plaintiff's back pain was nonsevere and caused no functional limitations.

II. Medical Opinion Evidence

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661,

---

367.) In this regard, even if the ALJ erred with respect to rejecting Dr. Garfinkel's opinion, it is unclear how that error harmed plaintiff. See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) ("We recognize harmless error applies in the Social Security context.").

7

671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

A. Dr. Sylvia Hamilton

Plaintiff argues that the ALJ erred in rejecting the December 2010 opinion of psychologist Sylvia Hamilton. (Pl.'s MSJ (ECF No. 20) at 15-17.) The ALJ's decision discussed Dr. Hamilton's opinion, stating:

> Psychological examiner Dr. Hamilton opined that the claimant had mild to moderate limitations in his ability to follow and remember simple tasks. He would have moderate to marked limitations in his ability to follow and remember complex or detailed instructions. He would have moderate difficulty maintaining adequate pace or persistence to perform simple, repetitive tasks. He would have mild to moderate difficulty maintaining adequate attention and concentration, adapting to changes in routine, withstanding the stress of a routine workday, maintaining emotional stability, and interacting appropriately with coworkers and supervisors.

(Tr. at 763.) The ALJ afforded this portion of Dr. Hamilton's opinion "good weight." (Id.)

However, the ALJ's decision also noted that Dr. Hamilton opined that plaintiff "would have moderate to marked difficulty sustaining full-time workdays and workweeks." (Id. at 764.) The ALJ afforded this portion of Dr. Hamilton's opinion "little weight." (Id.) The ALJ supported the rejection of this portion of Dr. Hamilton's opinion first by noting that it "was based on a one-time evaluation." (Id.) This is not a specific and legitimate reason for rejecting the opinion of an examining physician, as almost all examining opinions are based on a single examination.

The ALJ went on to support the rejection of Dr. Hamilton's opinion by stating that it "occurred just as the claimant was beginning outpatient mental health treatment," and that the record showed "that the claimant demonstrated steady improvement of his condition within 6 months." (Id. at 764.) That plaintiff's condition may have generally "improved" with treatment fails to provide a specific reason for rejecting Dr. Hamilton's opinion that plaintiff would have moderate to marked difficulty sustaining full-time workdays and workweeks. An impairment can improve but still leave a person unable to work. See Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression

makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Nor does a review of the exhibits cited by the ALJ in support of that argument provide any specificity. (Tr. at 764.) Many of the records are poor photocopies of indecipherable handwriting. One of the records cited by the ALJ—a Progress Note apparently from April of 2011—does reflect that plaintiff reported "significant improvement in his depressiveness since starting Cymbalta several months ago," but also states that plaintiff reported that "he was admitted to the psych ward @ Kaiser twice earlier this year," and "said he has tried to commit suicide twice in the past few months." (Id. at 1215.)

The final reason stated by the ALJ for rejecting Dr. Hamilton's opinion was that it was purportedly "not entirely consistent with the claimant's ongoing work as a care provider." (Id. at 764.) According to the ALJ's decision, however, plaintiff worked at most "80 hours per month" providing care for his mother. (Id.) In 2009 and 2010, plaintiff worked only "40 hours per month for his mother." (Id.) It is unclear how plaintiff's ability to care for his mother for 80 hours a month, let alone 40 hours a month, discredits Dr. Hamilton's opinion that plaintiff would have moderate to marked difficulty sustaining full-time workdays and workweeks.[5]

Accordingly, the court finds that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Hamilton's opinion.

B.  Dr. James Martel

Plaintiff also argues that the ALJ erred by rejecting the opinion of Dr. James Martel, plaintiff's treating ophthalmologist. (Pl.'s MSJ (ECF No. 20) at 12-14.) The ALJ's decision discussed Dr. Martel's opinion, stating:

> Treating ophthalmologist James Martel, MD opined in August 2015 that the claimant is unable to work around heights, dangerous equipment or moving machinery. He could work with larger objects at a close distance.

---

[5] Plaintiff testified that in working for his mother he doesn't "go out of [his] way to do anything extra for her." (Tr. at 868.) In this regard, plaintiff testified that he simply reminds her to take her medication when he takes his, gets her food when he gets his food, and takes her to her appointments. (Id.)

9

(Tr. at 763.) The ALJ afforded this portion of Dr. Martel's opinion "great weight." (Id.)

However, the ALJ afforded "little weight" to Dr. Martel's opinion that plaintiff "may have difficulty performing work requiring distance vision of over 10 feet." (Id.) In support of this determination, the ALJ asserted that Dr. Martel's opinion was "inconsistent with the discussed treatment records showing adequate vision in his right eye." (Id.) The ALJ's decision does not define what constitutes "adequate." The ALJ's decision, however, found that plaintiff's "vision in his right eye has remained fairly consistent throughout the record at 20/60 to 20/70 with correction."[6] (Id. at 761.) Dr. Martel's examinations revealed that plaintiff's corrected vision in his right eye was as poor as 20/100 or 20/200. (Id. at 1512, 1523, 1545.)

The ALJ also stated that plaintiff "admitted he was not told until December 2014 that he could no longer drive." (Id. at 763.) However, the California Department of Motor Vehicles ("DMV"), screening standard for applicants seeking to renew their driver license is: (1) 20/40 with both eyes tested together; and (2) 20/40 in one eye and at least, 20/70 in the other eye. "If you cannot meet the vision screening standard, you must have a minimum visual acuity in at least one eye better than 20/200 (best corrected)." https://www.dmv.ca.gov/portal/dmv/?1dmy&urile=wcm:path:/dmv_content_en/dmv/pubs/brochures/fast_facts/ffdl14. In this regard, it is unclear why plaintiff's inability to comply with the DMV's vision requirements in December of 2014 undermines Dr. Martel's opinion that plaintiff would have difficulty performing work requiring distance vision of over 10 feet.

The ALJ went on to assert that "it appears that Dr. Martel relied heavily on the claimant's own subjective statements rather than objective findings" and that it seemed that Dr. Martel accepted "uncritically as true most, if not all, of what the claimant reported." (Tr. at 763.) As an example in support of this finding, the ALJ noted that when asked if plaintiff could handle fine objects, Dr. Martel noted that plaintiff "had 'lost past job due to being unable to see fine objects,'" despite the fact that Dr. Martel did not begin treating plaintiff until 2014. (Id. at 763.)

---

[6] "20/20 vision means a subject has read a letter at 20 feet that was designed to be read at 20 feet. 20/40 vision means that a letter which should normally be read at 40 feet must be brought in to 20 feet before it is recognized." Rauenhorst v. U.S. Department of Transp., Federal Highway Admin., 95 F.3d 715, 716 (8th Cir. 1996).

1         Although the provided example may be a specific and legitimate reason for rejecting Dr. Martel's opinion concerning plaintiff's ability to handle fine objects, it is unclear why it supports a rejection of Dr. Martel's opinion that plaintiff might have difficulty performing work requiring distance vision of over 10 feet. As noted above, the ALJ found that plaintiff's vision in his right eye was at best 20/60 and Dr. Martel's own examinations found that plaintiff's vision was much worse. See Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1199-200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations").

The ALJ ended by stating:

> Moreover, Dr. Martel noted that his distance vision "is worse than near vision." Further, the record shows the claimant has sufficient vision to fill out paperwork, read The Bible, watch television, perform household tasks, and shop for groceries. As discussed elsewhere in this decision, there is reason to questioning the reliability of the claimant's subjective complaints.

(Tr. at 763) (citations omitted). Accepting the above statements from the ALJ as true, however, fails to provide a specific and legitimate reason for rejecting Dr. Martel's opinion that plaintiff may have difficulty performing work requiring distance vision over 10 feet.

In this regard, that plaintiff's distance vision is worse than his near vision is consistent with Dr. Martel's opinion. Moreover, the activities described by the ALJ do not obviously implicate the use of vision beyond 10 feet. While the ALJ may have found valid reasons for questioning plaintiff's subjective complaints, that does not provide a specific and legitimate reason for rejecting the opinion of a treating physician which is based on testing.

The ALJ also failed to fully evaluate Dr. Martel's opinion. Specifically, Dr. Martel also opined that plaintiff's ability to work where there are brighter lights was very poor, and that his vision in the dark or at night was poor. (Id. at 1544.) The ALJ did not discuss the treatment of Dr. Martel's opinion with respect to these limitations. "The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); see also Robbins v. Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("In determining a claimant's RFC, an

ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.").[7]

Accordingly, plaintiff is entitled to summary judgment on the claim that the ALJ's treatment of the medical opinion evidence constituted error.

## CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin.,, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, plaintiff's application has been pending since 2009, and the court is reluctant to send this matter back to the ALJ for yet a third bite at the apple. See, e.g., Benecke v. Barnhart,

---

[7] The ALJ's error with respect to Dr. Martel's opinion may arguably be harmless. See generally Stout, 454 F.3d 1050, 1054 (9th Cir. 2006) ("We recognize harmless error applies in the Social Security context."). In this regard, a Vocational Expert testified that even if plaintiff were "limited to performing close up visual tasks no more than 5 feet of (sic) his good eye," plaintiff could still perform the job of house cleaner. (Tr. at 767.) The court need not resolve this issue because remand is required by the ALJ's error with respect to Dr. Hamilton's opinion.

12

379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.").

Nonetheless, the court cannot say that further administrative proceedings would serve no useful purpose. For example, the medical evidence in this action is substantial and spans a considerable frame of time. And plaintiff has not challenged the ALJ's treatment of plaintiff's subjective testimony. Even correcting for the ALJ's errors, it is not clear to the court when, or if, plaintiff became disable. This matter will, therefore, be remanded for further proceedings consistent with this order.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 20) is granted in part and denied in part;

2. Defendant's cross-motion for summary judgment (ECF No. 27) is granted in part and denied in part;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with this order; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: March 9, 2018

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\barraza2286.ord

13